# EXHIBIT G

Deposition of Former KCDAO Detective-Investigator Christopher Salsarulo in *Quezada v. Brown*, 08 CV 5088 (E.D.N.Y.), Jan. 19, 2012

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

Case No. 08-CV-5088 (KAM)(VVP)

------------------------------------x

RUDDY QUEZADA,

                      Petitioner,

   v.

WILLIAM BROWN, Superintendent,

Eastern NY Correctional Facility,

                      Respondent.

------------------------------------x

   DEPOSITION OF CHRISTOPHER SALSARULO

      New York, New York

      Thursday, January 19, 2012

Reported by:

Amy A. Rivera, CSR, RPR, CLR

JOB NO. 45619

1

2        January 19, 2012

3        1:13 p.m.

4

5    Deposition of CHRISTOPHER
6  SALSARULO held at the office of HUGHES,
7  HUBBARD, & REED, LLP, One Battery Park
8  Plaza, New York, New York, pursuant to
9  Notice, before Amy A. Rivera, Certified
10 Shorthand Reporter, Registered Professional
11 Reporter, Certified LiveNote Reporter, and a
12 Notary Public of the State of New York.

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2   A P P E A R A N C E S:
3   HUGHES HUBBARD & REED
4   Attorneys for Petitioner
5        One Battery Park Plaza
6        New York, New York 10004
7   BY:  DAVID B. SHANIES, ESQ.
8        GABRIELLE Y. VAZQUEZ, ESQ.
9
10
11  KINGS COUNTY DISTRICT ATTORNEY'S OFFICE
12  Attorneys for Respondent
13       Renaissance Plaza at
14       350 Jay Street
15       Brooklyn, New York 11201
16  BY:  PHYLLIS MINTZ, ESQ.
17       MARIE-CLAUDE WRENN, ESQ.
18  Assistant Executive District Attorneys
19
20
21
22
23
24
25

1          CHRISTOPHER SALSARULO

2   C H R I S T O P H E R   S A L S A R U L O, having

3   been duly sworn, testified as follows:

4   EXAMINATION

5      BY MR. SHANIES:

6          Q.     Good afternoon, sir.

7          A.     Good afternoon.

8          Q.     Just before we get into questions, I

9   just want to go over a couple preliminary things,

10  pretty standard requests for a deposition, just

11  that we try to not to talk over each other so that

12  the court reporter can take down both of our

13  statements.  And if you can, try to remember to

14  give verbal answers so that, again, for the court

15  reporter.

16              Other than that, if you don't

17  understand a question, please let me know and I'll

18  be happy to clarify.  And if you don't know the

19  answer, that's fine, too, just let me know.

20              Is that fair enough?

21         A.     That is fair.

22         Q.     Okay.  So, can you tell me, please,

23  where you're currently employed?

24         A.     Yes.  I'm a Special Agent with the

25  Drug Enforcement Administration in New Jersey.

1           CHRISTOPHER SALSARULO
2      Q.    And when did you begin that
3 employment?
4      A.    I believe it was around -- it was the
5 fall of 1995, around September, I believe.
6      Q.    And prior to that, where were you
7 employed?
8      A.    By the Kings County District
9 Attorney's office.
10     Q.    And when did you begin at the DA's
11 office?
12     A.    I'm not sure of the date.  I'm
13 thinking it was around 1992, or so.  Yeah, I think
14 1992.
15     Q.    Was that your first employment or were
16 you employed elsewhere before that?
17     A.    Well, I had jobs since I was 16, but
18 before that, out of college, I worked for --
19 actually, across the street, at Bear Stearns &
20 Company, 2 Broadway.
21     Q.    Maybe let's go in order.  So,
22 immediately before the DA's office in '92, Bear
23 Stearns was your job directly before that?
24     A.    No.  I left Bear Stearns and went to
25 work for the family business.  My family has a

1        CHRISTOPHER SALSARULO

2            MS. VAZQUEZ:  We can take a break.

3            MS. MINTZ:  Just take a stretch.

4            MR. SHANIES:  Do you want to take 5,

5    10 minutes.

6            MS. MINTZ:  Yes.

7            MR. SHANIES:  All right.

8            (Recess.)

9    BY MR. SHANIES:

10       Q.   Do you know someone named Tom Buda,

11   B-U-D-A?

12       A.   I don't believe I do.

13       Q.   Have you heard his name since you've

14   been contacted about this case?

15       A.   This morning ADA Mintz mentioned that

16   name and I said I didn't remember that name.

17       Q.   You don't recall whether -- or do you

18   recall -- let me start over and strike that.

19            Do you recall whether Tom Buda was

20   present on March 11th or March 12th, 1993?

21       A.   I do not recall.

22       Q.   Do you recall anything about that

23   detective?

24       A.   No.

25       Q.   When you executed material witness

CHRISTOPHER SALSARULO

orders, did you always keep the person in a hotel or only some of the time?

  A.  I don't remember if all material witnesses were placed in a hotel or not.

  Q.  That did happen sometimes though, right?

  A.  Yes.

  Q.  And one of your jobs was to stay with the person while they were in the hotel?

  A.  Yes.

  Q.  Do you recall whether you went to a hotel on March 11th or 12th, 1993?

  A.  I do not.

  Q.  What would you typically do while you were at a hotel with someone subject to a material witness order?

  A.  We would check into the hotel, get two adjoining rooms, where you could pass through from one room to the other. The material witness would then have free range of the room.

       We would usually lock his door -- his or her door to the outside so that person would have a difficult time getting out. If he or she tried to get out, it would have to physically be

CHRISTOPHER SALSARULO

through, you know, us to get out through our door.

Most of the time I remember everybody watched TV, ordered some food, and then the detective investigators would work a shift until either that person, the material witness, would be brought back to the DA's office or a couple other DIs would come to relieve us.

Q. And how did you lock the hotel door?

A. We usually take a set of handcuffs and secure it somehow so it would be very difficult for the material witness to get out through that door.

Q. Did you ever have a material witness try to get out.

A. I don't believe so. I don't remember that happening to me.

Q. Do you recall if Sixto tried to get out?

A. I do not remember.

Q. Were both of the assigned detectives required to be with the person in custody at all times?

A. Okay, to be more specific, during like a custody in a hotel, yes, two people had to be

1       CHRISTOPHER SALSARULO
2  present at all times.
3       Q.   So, in adjoining rooms, was the
4  connecting door always open?
5       A.   Yes.
6       Q.   And would the person in custody go to
7  sleep if they were there overnight?
8       A.   Probably.  I would say most of the
9  time.
10      Q.   Did you sleep also?
11      A.   Sometimes we would take naps, yes.
12      Q.   You would take turns?
13      A.   Yes.
14      Q.   And were they allowed to have visitors
15 while they were in custody?
16      A.   I don't believe so.
17      Q.   Were they allowed to make phone calls?
18      A.   I think that was dependent on
19 instructions by the ADA.
20      Q.   Do you remember whether Sixto made any
21 phone calls?
22      A.   I do not.
23      Q.   Do you recall -- do you recall a
24 logbook that you maintained regarding the
25 movements of the person in custody?