# EXHIBIT F

Deposition of Former Kings County District Attorney Charles J. Hynes in *Collins v. City of New* York, 11 CV 766 (FB) (RML) (E.D.N.Y. December 19, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
JABBAR COLLINS,

                  Plaintiff,

                                    CIVIL ACTION
             -against-             No. 11CV00766

THE CITY OF NEW YORK; MICHAEL F.
VECCHIONE, BRIAN MAHER, STEPHEN
BONDOR, SHOLOM TWERSKY, ANTHONY
D'ANGELO, MELANIE MARMER, MORGAN J.
DENNEHY, VIRGINIA C. MODEST, and
JODI MANDEL, as employees of the
Kings County District Attorney's
Office and Individually, and VINCENT
GERECITANO and JOSE R. HERNANDEZ,
Individually and as members of the
New York City Police Department,

                  Defendants.
-----------------------------------x

                  December 19, 2013
                  9:30 a.m.


        "NON-CONFIDENTIAL PORTIONS"


Deposition of CHARLES J. HYNES, taken by

Plaintiff, at the Kings County District

Attorney's Office, 350 Jay Street, 19th Floor,

Brooklyn, New York, before Anneliese R. Tursi,

a Registered Professional Reporter and Notary

Public within and for the State of New York.



Case 1:20-cv-01801-FB-PK  Document 30-6  Filed 09/28/20  Page 3 of 11 PageID #: 535

CHARLES J. HYNES  Non-Confidential Portions
JABBAR COLLINS vs. NYC

December 19, 2013
2

```
STATE OF NEW YORK
COURT OF CLAIMS
----------------------------------x
JABBAR COLLINS,

                Claimant,
                                  CLAIM NO.
     -against-                    119586

THE STATE OF NEW YORK,

                Respondent.
----------------------------------x

                December 19, 2013
                9:30 a.m.


     "NON-CONFIDENTIAL PORTIONS"
```

Deposition of CHARLES J. HYNES, taken by

Plaintiff, at the Kings County District

Attorney's Office,  350 Jay Street, 19th

Floor, Brooklyn, New York, before Anneliese R.

Tursi, a Registered Professional Reporter and

Notary Public within and for the State of New

York.



CHARLES J. HYNES  Non-Confidential Portions
JABBAR COLLINS vs. NYC

December 19, 2013
3

A P P E A R A N C E S


LAW OFFICE OF JOEL B. RUDIN

Attorneys for Plaintiff

        200 West 57th Street, Suite 900

        New York, New York 10019

BY:     JOEL B. RUDIN, ESQ.
        TERRI S. ROSENBLATT, ESQ.
        212-752-7600
        jbr@rudinlaw.com



NEW YORK CITY LAW DEPARTMENT

OFFICE OF THE CORPORATION COUNSEL

Attorneys for Defendants

        100 Church Street

        New York, New York 10007

BY:     ARTHUR LARKIN, ESQ.
        ELIZABETH KRASNOW, ESQ.
        ANGHARAD WILSON, ESQ.
        212-788-0976
        ekrasnow@law.nyc.gov



CHARLES J. HYNES  Non-Confidential Portions
JABBAR COLLINS vs. NYC

December 19, 2013
4

A P P E A R A N C E S


CHARLES J. HYNES, DISTRICT ATTORNEY

OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY

    350 Jay Street

    Brooklyn, New York 11201-2908

BY:    DINO G. AMOROSO, ESQ.,
     DEPUTY DISTRICT ATTORNEY
    TONI C. LICHSTEIN, ESQ.,
     ASSISTANT DISTRICT ATTORNEY
    718-250-2211
    amorosod@brooklynda.org


ALSO PRESENT:

    JABBAR COLLINS

    THOMAS DEVINE, Videographer



1                    C.J. HYNES

2                (Plaintiff's Exhibit 311,

3           letter dated November 25th, 2013

4           marked for identification, as of

5           this date.)

6                (Plaintiff's Exhibit 312,

7           letter dated June 2, 2010 marked

8           for identification, as of this

9           date.)

10          THE VIDEOGRAPHER:  Good morning.

11   This is media No. 1 to the videotaped

12   deposition of Charles Hynes in the

13   matter of Jabbar Collins against The

14   City of New York, et al., being heard in

15   the US District Court, Eastern District

16   of New York, case No. 11-CV 00766.

17          This deposition is being held at

18   the District Attorney's office, 350 Jay

19   Street, 19th floor, Brooklyn, New York,

20   on December 19th, 2013 at approximately

21   9:30 a.m.

22          My name is Thomas Divine and I am

23   the videographer.  The court reporter is

24   Liese Tursi.

25          Counsel, will you please introduce



CHARLES J. HYNES  Non-Confidential Portions
JABBAR COLLINS vs. NYC

December 19, 2013
7

1            C.J. HYNES

2       yourselves and your affiliations, after

3       which the witness will be sworn in and

4       we may proceed.

5            MR. RUDIN:  For plaintiff, Joel

6       Rudin, Terri Rosenblatt and Jabbar

7       Collins.

8            MR. LARKIN:  For the defendant,

9       Arthur Larkin, L-A-R-K-I-N, New York

10      City Law Department.  With me is

11      Elizabeth Krasnow and Angharad Wilson.

12           MR. AMOROSO:  On behalf of the

13      Kings County District Attorney's Office

14      Dino G. Amoroso, A-M-O-R-O-S-O.

15           MS. LICHSTEIN:  And Toni C.

16      Lichstein, L-I-C-H-S-T-E-I-N.

17           THE VIDEOGRAPHER:  Thank you.

18           Liese, will you please swear in

19      the witness.

20  C H A R L E S   J.   H Y N E S,

21      Kings County District Attorney's Office,

22      350 Jay Street, Brooklyn, New York,

23      having been first duly sworn/affirmed by

24      the Notary Public (Anneliese R. Tursi),

25      was examined and testified as follows:



1                          C.J. HYNES

2    EXAMINATION BY MR. RUDIN:

3         Q.    Good morning, Mr. Hynes.

4         A.    Good morning.

5         Q.    We just were introduced.  My name

6    is Joel Rudin.  With me is Terri Rosenblatt

7    and Jabbar Collins.  Ms. Rosenblatt and I

8    represent Mr. Collins in his civil lawsuit

9    against The City of New York and a number of

10   individuals?

11        A.    Um-hum.

12        Q.    Are you familiar with the lawsuit?

13        A.    In general terms, yes.

14        Q.    I will be asking you some

15   questions today that I believe are relevant to

16   the issues in the lawsuit.

17        A.    Um-hum.

18        Q.    If I ask you a question that you

19   do not understand or that you need to have

20   clarified, do you understand that you may and,

21   in fact, should ask me to restate or clarify

22   the question?

23        A.    Sure, I understand.

24        Q.    Do you understand that if you give

25   an answer that upon reflection you think is in



Case 1:20-cv-01801-FB-PK   Document 30-6   Filed 09/28/20   Page 9 of 11 PageID #: 541

CHARLES J. HYNES  Non-Confidential Portions          December 19, 2013
JABBAR COLLINS vs. NYC                                              318

C. J. HYNES

1

2    believe that was a program that predated me by

3    at least two district attorneys.

4         Q.    Were you aware when you became

5    district attorney that there was still a hotel

6    custody program?

7         A.    Yeah, I'm sure I did.

8         Q.    And did you have any understanding

9    about the circumstances under which

10   individuals were in the custody of detective

11   investigators at hotels?

12        A.    As I understand, typically when a

13   material witness order was executed, the

14   witness had to promptly be brought before a

15   judge who then would make inquiry as to

16   whether or not the witness would agree to

17   cooperate with the trial, and to tell the

18   witness that the option was to go to civil

19   jail or to go in the custody of the DA in one

20   of the hotel rooms.  And that typically the

21   length of the stay was no more than overnight,

22   the next day the witness would testify and

23   then the material witness order would be

24   withdrawn.  That was my understanding of it.

25        Q.    Your understanding was that



C. J. HYNES

1
2   witnesses were given a choice by the judge,
3   either they could stay in a civil jail or they
4   could stay in a hotel in the custody of the
5   District Attorney's office?
6       A.      Yeah.
7       Q.      If they did not wish to stay in a
8   jail, then they had no choice but to stay in
9   the DA's custody?
10          MR. LARKIN:  Form objection.
11      A.      Well, that's the choice judges
12  would give a material witness.
13      Q.      Either you could be in a jail
14  maintained by the New York City Department of
15  Corrections or they could be in a hotel room
16  guarded by detectives from the DA's office?
17          MR. LARKIN:  Form objection.
18      A.      I'm not quite sure it is the
19  Department of Corrections. I think it is the
20  marshals, the city Marshall that did that but
21  it doesn't matter.
22          Yeah, either you would go to jail
23  or go to a hotel room.  And as I said,
24  typically the stay, as I understood it, my
25  recollection of it, it was an overnight stay



C. J. HYNES

2 and then they would testify and that would be

3 the end of it.

4     Q.   And if they chose, as you put it

5 to go to the hotel, were they free to leave?

6     A.   No.

7     Q.   So would it be fair to say that

8 they were prisoners?

9     MR. LARKIN:  Objection.

10     A.   They were not free to leave so,

11 sure, they were prisoners.  They were in

12 custody.

13     Q.   And did you have any policy prior

14 to March of 1995 as to whether or not the

15 defense had to be told when a witness was in

16 the involuntary custody of the DA's office?

17     A.   Nope.  It was my understanding

18 that during the course of a trial the defense

19 would learn about the material witness order

20 and the fact that the witness was testifying

21 under that kind of coercion.

22     Q.   Learn from whom?

23     A.   From the witness.

24     Q.   Well, what if the district

25 attorney didn't bring it out himself, how