# EXHIBIT O

# ADA Ruth E. Ross' Affirmation & Memo. of Law Opposing Ellis' July 2019 Amended CPL § 440.10 Motion

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 28

---

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>GREGORY ELLIS,<br>                              Defendant. | AFFIRMATION IN OPPOSITION TO AMENDED SECOND MOTION TO VACATE JUDGMENT OF CONVICTION AND IN OPPOSITION TO CONTEMPT MOTION<br><br>Kings County<br>Indictment Number<br>6587/94 |

   RUTH E. ROSS, an attorney admitted to practice in the State of New York and an Assistant District Attorney for the County of Kings, affirms under the penalties of perjury that the following statements are true:

   1.  This affirmation is submitted in opposition to defendant's affirmation by counsel, dated July 5, 2018, amending his prior pro se motion, in which he seeks, for the second time, to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10(1)(a) and (b).

   2.  The following statements are made on information and belief, based upon the records and files of the Kings County District Attorney's Office, including the police reports generated during the investigation into the murder of John Steadman, which led to defendant's arrest, and upon my conversation with former

25. On November 17, 1994, defendant's case was moved to trial before Judge Sheldon Greenberg, with ADA Kyle Reeves prosecuting the case.

**Richard Rivera's Relocation and the Material Witness Order Are Discussed on the Record.**

26. On November 28, 1994, after defendant's first trial had commenced and several witnesses had testified, a Rodriguez hearing (see People v. Rodriguez, 79 N.Y.2d 445 [1992]) was held to determine how well eyewitness Richard Rivera knew defendant. After Rivera testified at the Rodriguez hearing, he was expected to return to court the following day, November 29, 1994, to give his substantive testimony about the events of the shooting as he had witnessed them (Reeves 2018 Aff. ¶ 13).

27. Rivera came to court the following day, November 29, 1994, as he had been instructed to do, but he did not testify. Instead, defendant himself testified pursuant to the Rodriguez hearing (I.252 [appended hereto as People's Exhibit 13A]).[5] Accordingly, ADA Reeves called only one witness to testify that day, Detective Alexis Malpica, the lead detective in the

---

[5] The People do not have any transcripts containing defendant's testimony at the Rodriguez hearing; the knowledge that defendant testified at the hearing comes from the court saying that defendant had testified and been cross-examined at the hearing (I.252 [People's Exhibit 13A]).

11

investigation of the shooting death of John Steadman (Reeves 2018 Aff. ¶ 13).[6]

28. On November 30, 1994, Richard Rivera did not come to court in the morning as he had been instructed to do. ADA Reeves took the precaution of seeking a material witness order for Richard Rivera, in case he proved unwilling to come to court voluntarily (Reeves 2018 Aff. ¶¶ 15-17). Detective investigators from the District Attorney's Office would have been sent out to look for Rivera and to try to convince him to come in voluntarily (Reeves 2018 Aff. ¶¶ 19-21).

29. It is Kyle Reeves's present belief that Rivera was persuaded by either Detective Malpica or detective investigators from the District Attorney's Office to return to court voluntarily in the afternoon of November 30, 1994 (Reeves 2018 Aff. ¶ 24). That belief is supported by Reeves's colloquy with the trial judge, on the record, in open court, and apparently in defendant's presence, in which ADA Reeves stated that the material witness order which the trial judge had signed that morning could be vacated because Rivera had returned voluntarily (I.251 [People's Exhibit 13A]). Defense counsel was late to

---

[6] None of the transcripts that the People have found contain the testimony of Detective Alexis Malpica at defendant's first trial.

12

court that afternoon and was not present during this colloquy (I.251-52 [People's Exhibit 13A]).

30. In ADA Reeves's experience, the detective investigators at the Kings County District Attorney's Office "were trained to act in a manner to be affable and pleasant with civilian witnesses so as not to alienate them before their testimony. They were trained not to be heavy-handed or aggressive, as that approach tended to further drive away hesitant or reluctant witnesses. Instead, in the field, the DIs would generally be friendly, sympathetic and supportive of witnesses, rather than hostile and antagonistic." (Reeves 2018 Aff. ¶ 20). This experience informed Reeves's belief that Rivera had returned voluntarily.

31. When Rivera subsequently resumed the stand for the continuation of his direct testimony, the trial judge interrupted Reeves's direct examination of Rivera when Reeves asked if Rivera had been given any benefit for testifying (I.294-95 [appended hereto as People's Exhibit 13B]). At that point, the trial sent out the jury and the following colloquy took place:

> THE COURT: If my memory is correct, at some
> point I think I learned that this witness
> has been relocated as far as his home is
> concerned.

13

common-law spouse as well as to the victim's wife, threats which started as soon as Judge Koch released the names of the People's witnesses to another defense attorney, not Mr. Ostrowsky; ADA Reeves had not been present when Judge Koch released the names and believed that it had been done ex parte (I.300-02 [id.]).

33. In his trial testimony, Rivera repeated the account of the shooting that he had given in all the prior statements he had made to the police, to the District Attorney's Office, and to two Grand Juries: defendant was sitting in the front passenger seat of the car from which shots were being fired at John Steadman, and defendant was holding and firing a gun (Rivera: I.276-81).

34. According to records submitted by defendant, Rivera spent one night, from November 30, to December 1, 1994, in the Holiday Inn Crown Plaza, with two detective investigators, (Def. 2018 Amended 440 Exhibits L, M). The hotel was located at 104-04 Ditmars Blvd., in East Elmhurst, near the eastern end of

15

```
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 28
```

THE PEOPLE OF THE STATE OF NEW YORK

                -against-

GREGORY ELLIS,

                          Defendant.

Kings County Indictment Number 6587/94

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND IN OPPOSITION TO HIS CONTEMPT MOTION**

LEONARD JOBLOVE
RUTH E. ROSS
Assistant District Attorneys
    of Counsel

August 14, 2018

defendant's allegations because the material witness order <u>was disclosed</u> on the record (I.251 [People's Exhibit 13A]).

Defendant's further alleges, that despite the vacatur of the material witness order, Rivera really was being held under highly coercive physical conditions which defendant claims were no different than being a prisoner in jail (Def. Amended Memo. at 31-32). Despite defendant's use of variants of the word "coerced" or "coercion" more than 24 times in his memorandum of law (Def. Amended Memo. at 3, 7, 8, 9, 12, 15, 26, 29, 30, 31, 32), defendant has provided no sworn allegations to support his claim that any coercion was applied to Rivera in defendant's case. Instead, defendant relies upon newspaper articles about unrelated cases, and affidavits and depositions from unrelated cases involving other defendants, other witnesses, and other detective investigators.

The mere fact that a DI checked the word "prisoner" on a hotel voucher does not provide any information about what the actual conditions were in the hotel room Rivera shared with the two DIs for that one night. If Rivera's reluctance to testify on the morning of November 30, 1994 was due to renewed threats to Rivera or his family aimed at preventing Rivera from completing his testimony, the presence of the DIs would have been for Rivera's protection and not to coerce him to testify.

23

Nor did releasing Rivera immediately after his testimony prove that Rivera's stay at the hotel was coercive, as defendant claims (Def. Amended Memo at 2, 3, 7-9, 12, 15, 26, 29, 30-32). The threats against Rivera had been ostensibly been designed to prevent Rivera from testifying at defendant's trial. Once Rivera had testified, however, those who had threatened him had little to gain by harming him, because Rivera's sworn testimony would be available for all future proceedings, even if Rivera were killed. Thus, the fact that Rivera was released following his testimony only reflects that fact that his would-be assailants no longer had a motive to silence him.

The Appellate Division's decision in People v. McClain, 53 A.D.3d 556 (2d Dep't 2008), is instructive. In that case, the defendant and defense counsel knew of the possibility that the defendant's arrest had been captured by a surveillance camera on a nearby housing project. Further, the defendant consistently claimed the surveillance videotape would be exculpatory. However, the Appellate Division rejected the claim, explaining, "[s]ince the defendant knew of the possibility that the tape existed, it

24