UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

GREGORY ELLIS,

                        Petitioner,

       -against-

MICHAEL MCGINNIS, Superintendent, Southport
Correctional Facility

                        Respondent.

----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 00-CV-3246 (FB)

*Appearances:*
*For the Petitioner:*
GREGORY ELLIS, *Pro Se*
#95-A-4154
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

*For the Respondent:*
CHARLES J. HYNES, ESQ.
District Attorney, Kings County
By:    Linda Breen, Esq.
           Assistant District Attorney
Renaissance Plaza
350 Jay Street
Brooklyn, NY 11201

**BLOCK, District Judge:**

      *Pro se* petitioner, Gregory Ellis ("Ellis"), seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Ellis was indicted along with two co-defendants, Michael Lee ("Lee") and Dwayne Brown ("Brown") for the January 1, 1994 murder of John Steadman ("Steadman"). Each defendant was tried separately in State Supreme Court, Kings County. Ellis was convicted of Murder in the Second Degree, N.Y. Penal Law § 125.25[2], and is serving twenty-five years to life. Ellis contends that his conviction was based on perjured testimony, in violation of the Sixth Amendment, and he was denied the effective assistance of trial counsel, in violation of the Fourteenth Amendment. It is undisputed that Ellis's claims have been fully exhausted in state court. The Court, having reviewed the merits of his claims, denies the petition for the reasons set forth below.

## DISCUSSION

### I. Perjured Testimony

Ellis contends that the key prosecution witness, Richard Rivera ("Rivera") perjured himself at Ellis's trial. Ellis was tried twice; the first trial, in November 1994, ended in a mistrial. At that trial, Rivera testified that he saw both Ellis and Lee, with guns, in the car from which the shots that killed Steadman were fired. Breen Aff. Opp'n Mot. Vacate J. ¶ 7 (citing to Rivera testimony at first Ellis trial) ("Breen Aff. I"). According to Rivera, Ellis was sitting in the front passenger seat and Lee was in the rear. Prior to Ellis's second trial, in April 1995, Rivera was arrested and charged on an unrelated felony. Prior to testifying at Ellis's re-trial, Rivera was advised, by his own counsel, of his Fifth Amendment right against self-incrimination with respect to those cases. In addition, Rivera's counsel advised the court that his client would not testify with respect to his knowledge of the Steadman murder unless his client was granted immunity from any potential perjury prosecution that may arise from his testimony during the Ellis trial. The government refused to grant him immunity. The trial judge then spoke with Rivera outside the presence of the jury and explained that he was merely a witness, there was no reason for him to be concerned that he would be implicated in the murder, and he would not be subject to perjury charges unless he lied on the stand. Ellis Tr. at 166.[1] The court, therefore, determined that Rivera had no Fifth Amendment rights with respect to the events that transpired on January 1, 1994. Ellis Tr. at 167. Rivera was then compelled to testify. Consistent with his testimony at the first Ellis trial, Rivera testified that he observed a car, driven by Brown, with

---

[1]Hereinafter, "Ellis Tr." refers to the transcript from the second Ellis trial.

Ellis sitting in the front passenger seat and Lee in the rear.  Rivera said he heard gunshots and saw two sets of "sparks" coming from the passenger side of the car.  Ellis Tr. at 187.

Brown was tried next.  At Brown's trial, Rivera did not seek immunity for his testimony.  Rivera testified consistently with his testimony at the Ellis trial.  Breen Aff. I ¶ 9.

Lee was tried last.  Lee's first trial, in May 1995, resulted in a mistrial.  At that trial, Rivera again testified that he observed Lee in the backseat and Ellis in the front seat of the car from which the shots were fired.  At Lee's re-trial, Rivera refused to testify unless he received a cooperation agreement from the District Attorney's office that would favorably dispose of his open felony charge in exchange for his testimony.  The government refused to enter into such a cooperation agreement.  In addition, as he had done at Ellis's second trial, Rivera asked for immunity from a perjury prosecution.  Again, the government refused to make the offer.  For the first time, Rivera refused to allow the prosecutor to prepare him for trial.

On direct examination at Lee's re-trial, Rivera testified that he saw Lee and Ellis sitting in the car, on the passenger side, and he heard gunshots and saw one set of sparks.  *See* Lee Tr. at 149.[2]  Rivera also testified that he thought two guns were fired.  *See* Lee Tr. at 151. For the first time, however, Rivera testified that Lee was sitting in the front seat and Ellis was in the back, and he was not sure who was doing the shooting.  *See* Lee Tr. at 146, 151.  On cross-examination, Rivera was asked whether he recalled testifying with respect to this incident on prior occasions.  Specifically, Lee's counsel asked:

> Q:     [Y]ou did testify at an earlier time that [Lee] was in the back, correct?
> A:     I probably did.

---

[2]Hereinafter, "Lee Tr." refers to the transcript from the second Lee trial.

> Q:   So, you weren't telling the truth at that prior occasion, were you?
> A:   I wouldn't say that.
>      . . .
> Q:   Well, the testimony is different now than it was on May 17 with respect to where he was sitting, correct?
> A:   Yes.

Lee Tr. at 162. Rivera further testified on cross that the sparks were coming from the rear passenger side of the car. *See id.*

> On re-direct, the following colloquy occurred:

> Q:   Is there any doubt that Michael Lee was in that car on January 1, 1994?
> A:   No.
>      . . .
> Q:   Do you recall now as you sit here today exact[ly] where Mr. Lee was sitting in the car?
> A:   In the front of the car.
> Q:   And when the shots rang out how many sets of individual sparks did you see?
> A:   One.
> Q:   And where did those sparks come from?
> A:   From the car.
> Q:   Where in the car did those sparks come from?
> A:   From the passenger side of the car.
> Q:   Could you tell whether it was the front the back or both?
> A:   From the back.
> Q:   And who was in the back?
> A:   [Ellis].
>      . . .
> Q:   At the time the shots were being fired, Mr. Rivera, did you see [Lee] firing any of those shots?
> A:   I seen shots come from the car. I didn't see [Lee] shooting any shots. I couldn't tell.
> Q:   Did you see [Ellis] shoot any shots?
> A:   He was in the car. To me, the gunshots was coming from the back of the car.
> Q:   Did you see any of the shots coming from the front of the car?
> A:   I couldn't tell from where I was sitting.

| Q: | Do you remember any shots coming from the front of the car? |
|----|----|
| A: | I remember shots coming from the car. |
| Q: | Where in the car did those shots come from, Mr. Rivera? |
| A: | From the passenger side of the car. |
| | . . . |
| Q: | Where on the passenger side of that car did those shots come from, Mr. Rivera? |
| A: | From one of the doors. I know it came from that side of the car. |
| Q: | Is there a reason you are not answering the questions, sir? |
| A: | No. |
| Q: | Have you been threatened by any persons here about testifying here in Court? |
| A: | No. |

Lee Tr. at 168-72. According to the affidavit of Kyle Reeves, the Assistant District Attorney that prosecuted all three of the co-defendants, an off-the-record sidebar occurred at this point. Reeves avers that because of Rivera's demeanor on the stand, and the substance of his testimony, he began to believe that Rivera was "intentionally materially changing his testimony, possibly out of spite for th[e] Office's refusal to enter into a cooperation agreement with him." Reeves Aff. Opp'n Mot. Vacate J. ¶ 15. Reeves expressed his concern that Rivera may have committed perjury or was going to commit perjury. At this time, although the government had no interest in prosecuting Rivera for perjury and Rivera never stated that he was lying, as "trial strategy" the government granted Rivera immunity from a perjury prosecution for any prior inconsistent testimony. *Id.* at ¶ 16.

The court granted the government permission to impeach its own witness with

Rivera's prior testimony, pursuant to N.Y. Crim. Proc. Law § 60.35[1] (McKinney 1992).[3]

Rivera then testified as follows:

> Q:   Mr. Rivera, do you recall testifying at [a] prior proceeding in this particular matter?
> A:   Yes.
> Q:   And do you recall being asked by me this question and giving this answer: Question: Who did you see with the guns? Answer: [Ellis] and Michael Lee. Do you recall being asked that question and giving those answers?
> A:   Yes.
> Q:   And that's different than what you told this jury today?
> A:   Yeah. I mean, it's been a long time.
> Q:   Well, is it that you don't recall seeing [Lee] with a gun or you are now saying that [Lee] didn't have a gun?
> A:   It's been a long time.  I can't remember, really.  This happened in '93, '94.
>              . . .
> Q:   Now, would you tell the jury, is it that you don't recall where shots were coming from now?
> A:   No, I do recall the shots coming from the car, but it was coming from the back of the car.
> Q:   So, the answer that you gave at a prior proceeding when you said the front and back is not correct?
> A:   I don't remember saying that.
>              . . .
> Q:   Now, when you say today it was one set of sparks, was it one set of sparks or two?
> A:   I guess - - I guess it was one.
> Q:   So, the answer that you gave at a prior proceeding is incorrect?
> A:   I guess so.
>              . . .

---

[3]Section 60.35[1] provides:
> [w]hen, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.

> Q:    Other than Michael Lee and Gregory Ellis who else was on
>       the passenger side of that car at the time that you heard and
>       saw the gunshots?
> A:    Nobody.

Lee Tr. at 172-78.  On re-cross-examination, Rivera was asked:

> Q:    Mr. Rivera, I think you had mentioned that these events
>       happened a while ago?
> A:    Yes.
> Q:    It's hard to remember, correct? Is it true that you can't
>       really tell this jury without any kind of certainty what
>       happened that night?
> A:    I mean, I tried to describe the best way I could, I mean.
>       . . .
> Q:    But you don't know who shot Mr. Steadman, correct?
> A:    I don't know what bullet went in.  I don't know who.
> Q:    You don't know who had a gun that night, correct?
> A:    No.

Lee Tr. at 178-79.  The jury returned a verdict of not-guilty with respect to Lee.

In light of this testimony, Ellis made a motion in State Supreme Court, Kings

County to vacate the judgment on the ground of witness perjury, pursuant to N.Y. Crim. Proc.

Law § 440.10.  The motion was denied.  *See People v. Ellis*, No. 6587/94 (Supreme Court, Kings

County, May 29, 1997) (order denying motion to vacate judgment).  The court found that Ellis

failed to show that the government knew that Rivera's testimony at Ellis's re-trial was false, or

that his testimony was in fact false.  *Id.* at 11.  In this regard, the court reasoned that "[i]n light of

the threats to Rivera made by friends and relatives of Lee, the amount of time between the second

Lee trial and the incident, and the close relationship between the witness and Lee, the evidence

submitted is insufficient to establish the veracity of Rivera's testimony at the second Lee trial."[4]

---

[4]The Court estimates that Lee's re-trial occurred at least one and one-half years after the
commission of the crime (the crime occurred on January 1, 1994 and Lee's first trial occurred in
May 1995).

7

*Id.* In making these findings, the court considered "the moving papers, the People's affirmation in opposition, the reply affirmation, the People's supplemental affirmation, the defendant's appellate brief, letter by defense counsel dated April 14, 1997, the entire testimony (as opposed to the parts submitted with the motion and affidavits) of Richard Rivera at defendant's first and second trials and at the second trial of Michael Lee and . . . oral argument." *Id.* at 1.

Perjury is established by showing that the witness "knowingly and willingly" gave "materially false" testimony. *See* 18 U.S.C. § 1001(a)(2); *see also United States v. Salameh*, 54 F. Supp. 2d 236, 261-62 (S.D.N.Y. 1999). Merely pointing out inconsistencies is insufficient to support an allegation of perjury. *See United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1989) (presentation of a witness who recants or contradicts prior testimony should not be confused with perjury); *see also United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995) (even a direct conflict in testimony does not in itself constitute perjury). Once perjury is established, if the government "knew or should have known about the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Gallego*, 191 F.3d 156, 161-62 (2d Cir. 1999) (internal quotation omitted). However, if the government is unaware of the witness' perjury, a federal *habeas* petitioner must show that the perjured testimony was material and "the court is left with a firm belief that but for the perjured testimony, [he] would most likely not have been convicted." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2001).

Although Ellis was convicted in April 1995, because his petition, filed in April 2000, postdates the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern review of his petition. *See*

8

*Williams v. Taylor*, 120 S.Ct. 1495, 1518 (2000); *see also Lurie v. Wittner*, 228 F.3d 113, 120-21 (2d Cir. 2000). However, regardless of whether Ellis's petition is reviewed pre-AEDPA or post-AEDPA, the standard is the same - - the petitioner must show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented." *Compare* 28 U.S.C. § 2254(d) (1994) *with* 28 U.S.C. § 2254(e)(1) (1994 & Supp.2000); *see also Overton v. Newton*, — F. Supp. 2d. —, 2001 WL 661778, *7 (E.D.N.Y. June 11, 2001). In this regard, a state court determination of a factual issue is presumed to be correct. *See* 28 U.S.C. 2254(e)(1). The determination is unreasonable only where the petitioner meets his or her burden of "rebutting the presumption of correctness by clear and convincing evidence." *Williams*, 120 S.Ct. at 1521-22; *see also Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000).

   In deciding Ellis's § 440.10 motion, the state court found that Ellis failed to prove that Rivera's testimony at Ellis's second trial was false. Affording this determination its due deference, the Court finds that the petitioner has not rebutted its presumption of correctness by clear and convincing evidence. The testimony provided by Rivera at Lee's re-trial does not prove that Rivera "knowingly and willingly" testified falsely at Ellis's second trial. *See Lee Tr. at* 162 ("Q: So, you weren't telling the truth at that prior occasion, were you? A: I wouldn't say that."). At best, Rivera's testimony at the Lee re-trial appears confused and inconsistent. Indeed, his testimony differs on direct and re-direct at that trial - - on direct he testified that there were two guns and on redirect he said there was only one set of sparks.[5] In support of his petition, Ellis

---

[5]Specifically, Rivera testified on direct as follows:
  Q: Were you able to tell either by observing the sparks or number
  of gunshots how many guns were being fired?
  A: It was two.
Lee Tr. at 151.

relies solely on the record; he has not submitted any affidavits or other supporting evidence to show that Rivera did in fact offer false testimony at his trial. *See, e.g., Mendoza v. City of Rome, New York*, 872 F. Supp. 1110, 1124 (N.D.N.Y. 1994) ("in order to demonstrate that perjury has, in fact, been committed . . . the defendants must present much more than the flimsy hearsay and inconclusive affidavits submitted in support of this motion"). The state court found the circumstances surrounding Rivera's testimony at Lee's re-trial to be suspect. Significant time had passed since the incident, and Rivera and Lee had a close relationship - - implying that Rivera had a motive to change his testimony with respect to Lee. The state court determination that Rivera did not commit perjury was not unreasonable in light of the evidence presented.

Even assuming, *arguendo*, that Ellis has met the threshold burden of proving perjury, there is nothing in the record to suggest that the government was aware that Rivera was offering perjured testimony. Therefore, Ellis must show that the testimony was material and that he would not have otherwise been convicted. Ellis has not met this burden. At all times, Rivera's testimony places Ellis on the passenger side of the car, seated in a spot from which Rivera observed sparks. In fact, according to Rivera's version of events at Lee's re-trial, the case against Ellis is even stronger because he is the only one implicated as a shooter. Therefore, the change in testimony is not material. Because the Court is not left with the firm belief that Ellis probably would have been acquitted but for the alleged perjured testimony, the claim must fail.

## II. Ineffective Assistance of Counsel

Under the AEDPA, to succeed on a claim of ineffective assistance of counsel, a federal *habeas* court must review the claim pursuant to the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 120 S.Ct. at 1512 (the clearly

established Supreme Court rule for reviewing an ineffective assistance of trial counsel claim is set forth in *Strickland*); *see also* 28 U.S.C. § 2254(d)(1). Under the first prong, Ellis must show not simply that counsel erred, but that the error was not within the realm of reasonableness under the professional norms prevailing at the time of trial. *Strickland,* 466 U.S. at 687-88. Although the Supreme Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, courts should apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Id.* at 690. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Under the second prong, Ellis must establish that there is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* The court must consider the totality of the evidence before the jury. *Id.* at 695-96. The focus of the inquiry should be on the fundamental fairness of the trial, and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.*

The two prongs of the *Strickland* test may be reviewed by the Court in either order because the failure to satisfy *either* prong obviates the need to consider the other and independently defeats the ineffective assistance of counsel claim. *Id.* at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").

11

Ellis contends that his trial counsel was ineffective for failing to call eye-witness Curtis Anderson ("Anderson") at his second trial. At the first trial, Anderson, a close friend of Ellis's, testified that he had been at a New Year's party on the evening of the murder and had seen Ellis, Lee, Brown and the victim. He further testified that after the party everyone had congregated on the street. At approximately 2:30 or 3:00 a.m., Anderson saw Ellis walk away. Anderson testified that approximately an hour and a half later he saw a black car drive by from which the shots that killed Steadman were fired. He could not see into the car and was unable to identify any of the passengers. On cross-examination, Anderson testified that he consumed at least one bottle of Vodka. He further testified that he had gotten into several fights that evening. Anderson had a serious criminal background, including second-degree assault for slashing someone on a subway platform. In light of the damaging testimony elicited on cross-examination and the likelihood that his credibility was seriously impaired, it was sound trial strategy not to call Anderson at the second Ellis trial. Furthermore, because Anderson did not know Ellis's whereabouts at the time the shooting took place, between 4:00 and 4:30 a.m., nor could he see into the car, his testimony was not exculpatory. Accordingly, the claim must fail.

## CONCLUSION

The petition is denied.  The Court determines that a certificate of appealability will not be issued since Ellis has failed to make a substantial showing of the denial of a federal right.  *See* 28 U.S.C. § 2253.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated: Brooklyn, New York
      June 27, 2001

13