OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY
APPEALS BUREAU
NOTICE OF ENTRY ~~DATED~~ Mailed 11-1-19
Atty + pro se

KINGS COUNTY D.A.
APPEALS BUREAU
'19 OCT 30 PM 4:39
RECEIVED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 39
---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

   -against-

GREGORY ELLIS,

     Defendant.

---------------------------------------------------------------X

DECISION AND ORDER

Hon. Sharen D. Hudson

Indictment No. 06587-1994

   The Defendant, Gregory Ellis, was convicted upon a jury verdict of violating Penal Law ("PL") § 125.25(2) – Murder in the Second Degree and other related charges. The Defendant now moves to vacate the judgment of conviction pursuant to Criminal Procedure Law ("CPL") § 440.10. The People oppose the Defendant's motion. The Court has reviewed Defendant's motion papers, the People's opposition, the court file and all relevant statutes and case law and, for the reasons discussed hereafter decides the Defendant's motion as follows:

## *Background*

   On January 1, 1994 between the hours of 4:00a.m and 5:30a.m, John Steadman was shot and killed near the corner of Farragut Road and East 108th Street in Brooklyn, New York. During police investigation, Richard Rivera was identified as an eyewitness to the shooting. Rivera testified that as he was walking home and passed the corner of Farragut Road and East 108th Street, he saw some people he recognized on the corner. Curtis Dubois and John Steadman were among them. Rivera testified that he saw some people on the street arguing with people inside a car. Rivera further testified that he saw the Defendant, whom he had known for ten

1

years on a casual basis, and Michael and Dwayne Brown. According to Rivera, Defendant was in the front passenger seat, Lee was in the back, and Brown was driving. Rivera then heard about ten or twelve gunshots and saw gunfire coming from the car. Rivera testified that he saw the Defendant and Michael Lee stick their heads out of the car and start shooting. Rivera stated that the shooting was coming from both the front and back seats of the car. John Steadman fell to the ground. John's sister, Carrie Steadman, ran out and tried to give him mouth-to-mouth resuscitation as he lay in the street.

Charles Jordan was sitting with a friend in his parked car near Glenwood Road, approximately 150 feet from the shooting. Jordan testified that he saw lights flicker from the car in the intersection and heard what sounded to him, as an "ex-military man," like gunshots. Jordan and his friend went to investigate. Jordan's friend recognized Steadman and convinced Jordan to drive Steadman to Brookdale Hospital. When they got to the emergency room, Jordan went inside and asked for someone to come outside to get Steadman, however by the time someone came, Steadman was dead. Sylvia Barr, who knew the Defendant from school, also testified. Barr testified that as she was looking out of her apartment window she saw Steadman and Curtis Dubois crossing the street. Barr further testified that she heard several gunshots and saw Steadman fall to the ground. According to Barr, the gunshots came from a car, but she could not see anyone in the car because it was dark.

### *Procedural History*

The Defendant was charged under Kings County Indictment Number 06587-1994 with two counts of Murder in the Second Degree and other related charges for the shooting death of John Steadman on January 1, 1994. Michael Lee and Dwayne Brown were indicted and tried

separately from the Defendant and each other. Defendant's first trial on the charges arising out of the Steadman murder ended in a hung jury and a mistrial. The testimony at Defendant's retrial is summarized above. On May 30, 1995 the Defendant was convicted, following a jury trial, of murder in the second degree and sentenced to twenty-five years to life. (Beldock, J., at Trial and Sentence). On May 29, 1997 the Honorable Carolyn E. Demarest denied the Defendant's first motion to vacate his conviction. On November 3, 1997, the Appellate Division, Second Department, affirmed the Defendant's conviction. *People v. Ellis*, 244 A.D.2d 354 (2nd Dept 1997). On June 28, 2001, the United States District Court for the Eastern District of New York denied the Defendant's federal habeas corpus petition. Pursuant to the judgment of conviction, Defendant is currently incarcerated. The Defendant now moves a second time to vacate his judgment of conviction pursuant to CPL § 440.10.

### *Parties' Contentions*

The Defendant argues that the judgment of conviction should be vacated pursuant to 440.10(1)(b), (c), (d), (f), (g) and (h) and the Due Process Clauses of the State and Federal Constitutions. The Defendant's motion is based on two main claims: 1) *Brady* violations on the part of the prosecutor and 2) actual innocence. The Defendant maintains, inter alia, that his conviction was falsely secured by former prosecutor, Assistant District Attorney Kyle Reeves, who secretly coerced the star witness against Defendant into testifying, knowingly used false or misleading evidence and argument, and suppressing crucial impeachment evidence at trial. Defendant states that the only witness implicating him in the crime was prosecution witness Richard Rivera. Defendant maintained his innocence at trial and sentencing.

Defendant argues that the deception employed in the Defendant's case provides at least five grounds to vacate his conviction. First, Defendant argues that the conviction must be vacated based on Reeves' knowing use of false or misleading evidence and argument. In addition, Defendant contends his conviction must be vacated under CPL § 440.10(1)(b), which allows a court to vacate a conviction if it was "procured by duress, misrepresentation or fraud" on the part of the prosecutor. The Defendant asserts that his conviction must be vacated pursuant to *Brady v. Maryland*, 373 US 83 (1963), which requires the prosecution to disclose all material evidence favorable to the defense. Defense counsel argues that the cumulative impact of the suppressed evidence easily satisfies the applicable materiality standard, especially since Reeves suppressed the evidence after falsely assuring the defense he would disclose all *Brady* material. Furthermore, Defendant contends that Reeves' use of Rivera's illegally coerced testimony violated his right to due process. Finally, the Defendant argues his conviction must be vacated based on newly discovered evidence grounds.

The People oppose the Defendant's motion. The People argue the Defendant's motion should be summarily denied because all of the Defendant's claims are procedurally barred and meritless. In particular, the People argue that two of Defendant's present claims have been adjudicated and rejected on the merits on two prior occasions. Defendant's claims that Rivera gave perjured testimony at Defendant's retrial and that Defendant was denied the effective assistance of counsel were already raised and rejected in the Defendant's first motion to vacate and in the Defendant's federal habeas petition.

## *Analysis*

There is a presumption of regularity which attaches to judgments of conviction (Fisch, Evidence § 1133 [2d ed 1977]). In order to overcome that presumption and entitle a defendant to a hearing on a motion to vacate the judgment pursuant to CPL § 440.10, the defendant has the burden of coming forward with allegations sufficient to create an issue of fact as to matters not appearing on the record of the underlying conviction. *People v. Crippen*, 196 A.D.2d 548, 549 (2nd Dept. 1993) lv denied 82 N.Y.2d 848 (1993); see also *People v. Mims*, 94 A.D.3d 909 (2nd Dept. 2012) lv denied 19 N.Y.3d (2012); *People v. Cruz*, 14 N.Y.3d 814, 816 (2010).

CPL § 440.10(1)(h) permits a court in which a judgment was entered the power to vacate that judgment upon showing that "the judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." Post-judgment proceedings under CPL § 440.10 are viewed as an emergency measure, affording a defendant a remedy only where no other judicial relief is, or ever was, available to him. *People v. Donovan*, 107 AD2d 433 (2d Dept 1985). Furthermore, in order to obtain reversal of a judgment under this provision, the defendant must make a showing that no other remedies or procedures exist that can serve, or might have served this purpose. *People v. Reese*, 100 Misc 2d 951 (Sup Ct, Kings County 1979).

CPL § 440.10 states, in pertinent part:

2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate judgment when:
    (a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from a judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue;

5

The purpose of this provision is to prevent CPL § 440.10 from being used as a substitute for a direct appeal where a defendant could have raised the issue on appeal, but failed to do so. *People v. Cooks*, 67 NY2d 100, 103 (1986). As the Court of Appeals noted in *Cooks*, "only in the unusual situation that sufficient facts with respect to the issue do not appear on the record is a CPL § 440.10 motion to vacate available as a means of review." *Id* at 104.

In addition, a defendant moving to vacate a judgment of conviction under CPL § 440.10(1)(g) based upon newly discovered evidence has the burden of proving every essential fact by a preponderance of the evidence (see CPL § 440.30[6]; *People v. Tankleff*, 49 A.D.3d 160, 179–180, 848 N.Y.S.2d 286). The new evidence may only be considered if it satisfies the six criteria set forth in *People v. Salemi*, 309 N.Y. 208, 216, 128 N.E.2d 377, cert. denied 350 U.S. 950, 76 S.Ct. 325, 100 L.Ed. 827, i.e., (1) it must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not have been discovered before trial by the exercise of due diligence, (4) it must be material to the issue, (5) it must not be cumulative, and (6) it must not be merely impeaching or contradictory to the former evidence (*see People v. Marino*, 99 A.D.3d 726, 730, 951 N.Y.S.2d 740; *People v. Tankleff*, 49 A.D.3d at 179, 848 N.Y.S.2d 286).

In *Brady v. Maryland*, 373 US 83 (1963), the Supreme Court held that the prosecution has an affirmative duty to disclose to the defense evidence in its possession that is both favorable to the defense and material to guilt or punishment. This prosecutorial duty is well established in New York (*see e.g. People v. Savvides*, 1 NY2d 554), and the prosecution's failure to disclose *Brady* material violates a defendant's constitutional right to due process. *People v. Wright*, 86 NY2d 591, 595 (1995). In *Wright*, where the People did not dispute defendant's factual allegations that the complainant had previously operated as a police informant, the Court of

Appeals held that the People had impliedly conceded the truthfulness of that allegation. *See, e.g., People v. Ciaccio*, 47 NY2d 431, 438. *See also People v. Gruden*, 42 NY2d 214, 216 ("[n]ormally what is not disputed is deemed to be conceded"). Consequently, the Court reasoned, if the allegations made by defendant constituted *Brady* material, the trial court was obligated to grant defendant's CPL § 440.10 motion. *See* CPL § 440.30[3]), *People v. Gruden. supra*, at 215-216.

"In New York, where a defendant makes a specific request for a document, the materiality element is established provided there exists a 'reasonable possibility' that it would have changed the result of the proceedings" (People v. Fuentes, 12 N.Y.3d at 263, 879 N.Y.S.2d 373, 907 N.E.2d 286, quoting People v. Vilardi, 76 N.Y.2d 67, 77, 556 N.Y.S.2d 518, 555 N.E.2d 915). "Absent a specific request by defendant for the document, materiality can only be demonstrated by a showing that there is a 'reasonable probability' that it would have changed the outcome of the proceedings" (People v. Fuentes, 12 N.Y.3d at 263, 879 N.Y.S.2d 373, 907 N.E.2d 286, quoting People v. Bryce, 88 N.Y.2d at 128, 643 N.Y.S.2d 516, 666 N.E.2d 221; see People v. Vilardi, 76 N.Y.2d at 73, 556 N.Y.S.2d 518, 555 N.E.2d 915; People v. Salton, 74 A.D.3d at 998–999, 905 N.Y.S.2d 199; People v. Bryant, 247 A.D.2d 400, 401, 668 N.Y.S.2d 646). "The mere possibility that undisclosed evidence, which was not requested, might have helped the defense or affected the outcome of the trial does not establish materiality in the constitutional sense" (People v. Figueroa, 213 A.D.2d 669, 669–670, 625 N.Y.S.2d 49; see People v. Salton, 74 A.D.3d at 999, 905 N.Y.S.2d 199; People v. Alongi, 131 A.D.2d 767, 768, 516 N.Y.S.2d 794).

In *People v. Spruill*, 164 A.D.3d 1270 (2018) the court held, the fact that prosecutor had obtained a material witness order to secure eyewitness's testimony at murder trial was not

exculpatory, and thus alleged withholding of evidence was not a Brady violation. The court found the eyewitness's absence was due to her fear of testifying against defendant, and during trial, prosecutor informed court, among other things, that one day after shooting, an individual told eyewitness's sister that eyewitness would be killed if she returned to the area. Furthermore, the court opined, defendant was not prejudiced by failure of prosecutor to disclose that he had obtained a material witness order for eyewitness, and thus failure to disclose was not a Brady violation; even if the order was exculpatory, jury was aware that eyewitness did not want to testify, because she testified that she "didn't want to be here," that "detectives had to threaten" her to get her to court, and that she "didn't want to come. *Id* at 1275.

Here, the Defendant asserts that the new evidence proffered consists of a November 30, 1994, ex parte motion Reeves made during the Defendant's first trial for a secret material witness order, the resultant material witness order and warrant, DA detective-investigator hotel custody records concerning Rivera's incarceration, and sworn deposition testimony from former DA Charles Hynes and several Brooklyn DA detective-investigators. The Defendant also contends that Michael Lee's trial transcript consists of admissions Lee made to his girlfriend that he shot Steadman. The defense contends that had the alleged *Brady* violations been disclosed, the outcome of the trial would have been different.

Defendant claims he is entitled to vacatur of his conviction because the alleged prosecutorial misconduct constituted misrepresentation and fraud within the meaning of CPL § 440.10(1)(b) and because the court orders and the affirmations that were submitted to obtain those court orders constitute newly discovered evidence under CPL §440.10(1)(g). "But courts are not always required to sacrifice justice in the case before them to the possibility of such deterrence." *People v. Williams*, 7 NY3d 15, 20 (2006) citing *Brady*, 373 US at 87 ("The

8

principle ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.") The court declines to find that a *Brady* violation occurred here. As noted in *People v. Spruill*, supra the fact that Reeves had obtained a material witness order to secure Rivera's testimony at the murder trial was not exculpatory, and thus alleged withholding of the material witness order was not a *Brady* violation. Additionally, the Defendant has not been prejudiced by the failure of Reeves to disclose that he had obtained a material witness order for Rivera. This failure was not a *Brady* violation. Moreover, evidence of admissions Lee made to his girlfriend that he shot Steadman did not constitute a *Brady* violation. Here, the disclosure of the material witness order and Lee admission would be material only if there is a reasonable probability that, had they been disclosed, the outcome of the proceedings would have been different. *See People v.* Spruill, supra; *People v. Fuentes*, 12 N.Y.3d at 263, 879 N.Y.S.2d 373, 907 N.E.2d 286; *People v. Wagstaffe*, 120 A.D.3d at 1364, 992 N.Y.S.2d 340). Such a reasonable probability has not been established in this case.

With respect to a claim of actual innocence, as distinguished from a specific constitutional violation, a constitutional violation occurs only if there is clear and convincing evidence that the defendant is innocent (*see Montoya v. Ulibarri*, 142 N.M. at 98, 163 P.3d at 485; *State ex rel. Amrine v. Roper*, 102 S.W.3d at 548; *Miller v. Commissioner of Corr.*, 242 Conn. at 792, 700 A.2d at 1132. The constitutional violation on a claim of actual innocence is that the defendant is subject to a criminal conviction while he or she is in fact innocent. Mere doubt as to the defendant's guilt, or a preponderance of conflicting evidence as to the defendant's guilt, is insufficient, since a convicted defendant no longer enjoys the presumption of innocence, and in fact is presumed to be guilty (*see Schlup v. Delo*, 513 U.S. at 326, 115 S.Ct. 851 n. 42; *Herrera v. Collins*, 506 U.S. at 398, 113 S.Ct. 853).

9

Here, the unsigned affidavit of Gena Powell, Michael Lee's girlfriend, states that Lee told Powell that he fired a gun after attending a party on January 1, 1994 in the early morning and believes he killed someone. Powell's affidavit states that Lee had confessed to her six or seven times that he was a shooter on January 1, 1994 and caused the death of an individual. Despite Lee's admission that he was involved in the shooting, the admission does not exonerate the Defendant from liability. Although Lee admits that he was a shooter during the January 1, 1994 murder, it does not support the conclusion that he was the only shooter. Therefore, Lee's admission fails to meet the burden of newly discovered evidence and fails to support the Defendant's claim of actual innocence. The Defendant has failed to even establish a prima facie showing of actual innocence. *People v. Hamilton*, 115 A.D.3d 12 (2014). Accordingly, for the foregoing reasons the Defendant's motion to vacate his judgment pursuant to CPL § 440.10 is denied in its entirety without a hearing.

This opinion shall constitute the decision and order of the Court.

Dated: October 25, 2019
Brooklyn, New York

                                                  Hon. Sharen D. Hudson
                                                  A.J.S.C.



ENTERED
OCT 30 2019
NANCY T. SUNSHINE
COUNTY CLERK